**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC.,<br><br>Plaintiff,<br>v.<br><br>RT GROUP LOGISTICS, INC., TEAM CHAMPIONS, INC. RUN DIRECT, INC., NAZAR TRUKHAN, and VITALII ROPII,<br><br>Defendants. | Case No. 25 CV 01794<br><br>Honorable Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

RT Group Logistics, Inc. and Team Champions, Inc. are Illinois holding companies that each executed three loan agreements with De Lage Landen Financial Services, Inc., a Michigan corporation. They used the loans to purchase semi-trailer trucks for the trucking company, Run Direct, Inc., and agreed to use the trucks as collateral. The three Illinois companies and their owners, Nazar Trukhan and Vitalii Ropii, guaranteed RT Group's and Team Champions' obligations under the loan agreements, including their monthly installment payments. DLL claims that RT Group and Team Champions failed to make timely payments and that they and their guarantors have not repaid the loans. DLL sues them for breach of contract to recover the outstanding loan amounts and for replevin and detinue to repossess the trucks.

Plaintiff DLL has moved for summary judgment. It presents evidence establishing that RT Group, Run Direct, Ropii, and Trukhan failed to make timely payment when due and demanded. The Court finds no material issue of genuine fact about whether they breached their contracts. However, the responding Defendants—all but Run Direct—raise a dispute about DLL's damages calculation that cannot be resolved on the existing record. Therefore, the Court grants summary judgment on liability for DLL's breach-of-contract claims against Defendants RT Group, Run Direct, Ropii, and Trukhan and reserves its ruling on the damages amount. Further, the undisputed facts establish DLL's superior rights to the RT Group trucks, so the Court grants summary judgment on its replevin and detinue claims.

DLL also seeks summary judgment on claims predicated on the Court finding default under the Team Champions' loan agreements. However, deciding what constitutes a default and evaluating whether Team Champions defaulted effectively decides the breach-of-contract claims against it. Those claims are not presented in

this motion because at the time of DLL's filing, Team Champions entered into bankruptcy and stayed the claims. Since then, the stay has terminated. So that the Court may properly evaluate all claims that depend on the same legal determinations, the Court denies DLL's motion to the extent it seeks summary judgment on the claims against RT Group, Run Direct, and Trukhan for the alleged breach of their Team Champions guaranties and the claims against Team Champions for replevin and detinue, without prejudice to refiling.

## Background

The Court considers DLL's purported facts and Defendants' responses about RT Group, Run Direct, Ropii, and Trukhan. The following facts are undisputed unless otherwise noted.[1] RT Group entered into three loan agreements with DLL to finance its purchase of semi-trailer trucks. DRPSOF ¶¶ 29, 33, 37. To induce DLL to enter into the agreements, Run Direct, Ropii, and Trukhan executed guaranties for the full and prompt payment and performance of all of RT Group's contractual obligations. *Id.* ¶¶ 31, 35, 39.[2] To secure RT Group's obligations, RT Group granted first priority security interests in the trucks, as reflected on the face of the titles. *Id.* ¶¶ 32, 36, 40. In each loan agreement, RT Group agreed to pay specific monthly payments. *Id.* ¶¶ 30, 34, 38. The agreements contain a "default" provision, which defined default to include "Customer fails to pay any payment or sum when due." [93] at 86, 110, 129.[3] Upon an event of default, DLL is entitled to seek immediate payment of the unpaid balance plus prejudgment interest, late fees, and attorneys' fees and costs. *Id.* at 84, 86, 108, 110, 127, 129.

DLL submits that RT Group, Run Direct, Ropii, and Trukhan failed to make payments when due and thus defaulted on their agreements. DRPSOF ¶¶ 41–42. Defendants dispute the conclusion that they defaulted and cite Trukhan's testimony

---

[1] The Court cites to Defendants' response to Plaintiff DLL's statement of facts, docketed at [101], as "DRPSOF." Defendants did not submit a statement of additional facts. The Court does not consider the exhibits attached to DLL's reply brief, as it did not request a reply in support of its statement of facts under Local Rule 56.1(f) or seek leave to supplement the record. *See, e.g., Great Am. Ins. Co. v. WCP Solar Servs., LLC*, 2022 WL 22934951, at *2 (N.D. Ill. May 12, 2022); *Abdallah v. FedEx Corp. Servs., Inc.*, 2019 WL 4464305, at *7 n.5 (N.D. Ill. Sep. 18, 2019).

[2] DLL states that Run Direct, Ropii, and Trukhan each personally guaranteed RT Group's obligations. [96] ¶¶ 31, 35, 39. Defendants' replication of the statement in their response only includes Ropii. Regardless of whether this is a scrivener's error or a failure to respond to parts of the asserted fact under Local Rule 56.1(e), the fact is deemed admitted.

[3] Defendants do not dispute the facts about the agreements. The Court considers the language of the agreements themselves, which are exhibits referenced in the admitted facts. *See Torry v. City of Chicago*, 932 F.3d 579, 584 (7th Cir. 2019) ("A court need consider only the cited materials, but it may consider other materials in the record." (quoting Fed. R. Civ. P. 56(c)(3)).

contesting default. [93] at 271–72, 277–79. Trukhan believed that Defendants had a contractual grace period for payment, but he also acknowledged that payment was late by "30 to 35 days." *Id.* Indeed, DLL cites Ropii's testimony admitting that Defendants failed to pay and a declaration from DLL's litigation specialist who claims personal knowledge of Defendants' failure to pay when due. *Id.* at 17, 30, 309. Accordingly, the Court admits the fact that Defendants failed to make timely payments to DLL.

DLL also claims that it demanded payment from RT Group, Run Direct, Ropii, and Trukhan who then failed or refused to pay. DRPSOF ¶¶ 46–47.[4] Defendants object to the statements as "compound and confusing." *Id.* Although each statement contains two facts—DLL's demand, and a Defendant's response—the record is not so cumbersome that the assertions and supporting evidence cannot be compared. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632–33 (7th Cir. 2009) (affirming district court's admission of "bundled" facts under its discretion over local rule requirements). The Court overrules the objection. The fact is deemed admitted because Defendants dispute it without providing supporting evidence, which is required under the local rules. L.R. 56.1(e)(3); *see Jewel Sanitary Napkins, LLC v. Busy Beaver Publ'ns, LLC*, 178 F.4th 375, 383–84 (7th Cir. 2026) (affirming the admission of disputed facts as undisputed where the nonmovant failed to properly address the proposed facts).

Another relevant fact disputed by the parties is whether DLL fulfilled its obligations under the loan agreements. DRPSOF ¶ 48. Defendants object to the statement as vague, but they cite Ropii's testimony identifying DLL's obligation as funding the truck purchases. [93] at 309; *see also id.* at 269 (Trukhan's testimony that "[e]verybody is sticking to their obligations"). Ropii concedes that DLL met that obligation. *Id.* at 309. Indeed, Defendants admit that DLL funded the purchase of the subject equipment. DRPSOF ¶ 48. Defendants further object to the statement as a legal conclusion, but under the applicable Pennsylvania law, a party's substantial performance under an agreement is a factual question. *Eddystone Borough v. Peter V. Pirozzi Gen. Contracting, LLC*, 2015 WL 1542284, at *11 (E.D. Pa. Apr. 7, 2015) (citing *W. Dev. Grp., Ltd. v. Horizon Fin., F.A.*, 592 A.2d 72, 77 (Pa. Super. Ct. 1991)). Thus, these objections are overruled. The fact that DLL was obligated to fund RT Group's truck purchases and fulfilled those obligations is undisputed.

Finally, DLL claims that it demanded the trucks from RT Group pursuant to the security interest provided in the loan agreements, but to no avail. DRPSOF ¶ 58. Defendants only dispute their failure to comply, because they claim that DLL

---

[4] Again, Defendants do not replicate DLL's original statement. DLL asserts that it demanded payment from Ropii, Trukhan, and Run Direct, but Defendants' filing only includes Ropii. [96] ¶ 47; DRPSOF ¶ 47. The parts about Trukhan and Run Direct are admitted either because Defendants failed to respond properly under Local Rule 56.1(e), or for the reasons given in this paragraph.

received compensation for at least one truck. *Id.* However, they fail to cite to specific controverting evidence, so the Court admits DLL's fact. L.R. 56.1(e)(3). The Court also admits the undisputed fact that the trucks are not subject to any taxes, assessments, fines, seizure orders, or replevin orders. DRPSOF ¶ 57.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the movant seeks summary judgment on a claim as to which it bears the burden of proof, it must identify the evidence supporting the elements of its claim and "demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). If the movant fails to make this initial showing, then the Court "is obligated to deny the motion." *Id.* Otherwise, the non-movant must present sufficient evidence to show a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The Court construes all facts and makes all reasonable inferences in the non-movant's favor. *Metzler v. Loyola Univ. Chi.*, 164 F.4th 612, 616 (7th Cir. 2026).

## Discussion

Before turning to DLL's arguments, the Court addresses the claims related to Team Champions' loan agreements. DLL did not move on the claims that Team Champions breached its loan agreements and guaranties because Team Champions declared bankruptcy, which automatically stayed DLL's litigation against it. *See* 11 U.S.C. § 362(a). However, its claims against Trukhan, RT Group, and Run Direct for breaching their Team Champions guaranties depend on whether Team Champions defaulted under its loan agreements. Similarly, DLL moved on its claims for replevin and detinue against Team Champions because of a limited lift of stay, but those claims also turn on Team Champions' default. Under applicable Pennsylvania law, whether Team Champions defaulted is a legal question involving the interpretation of the default provisions in the loan agreements. *See Mut. Benefit Ins. Co. v. Koser*, 318 A.3d 937, 941 (Pa. 2024) ("[C]ontract construction and interpretation is generally a question of law for the court to decide. The legal effect of a contract provision presents a question of law . . . ." (citation omitted)); *see also Allen v. Cedar Real Est. Grp., LLP*, 236 F.3d 374, 380 (7th Cir. 2001) (treating rules of contract interpretation as substantive law governed by state law in diversity cases). So, as to Team Champions' motion on replevin and detinue, DLL essentially requests the Court to rule on the breach claims not presented in this motion.

Upon review of Team Champions' bankruptcy docket, the bankruptcy court dismissed its case after the parties completed their motion briefing, which terminated the automatic stay. *See* Order Dismissing Debtor, *In re Team Champions, Inc.*, No. 25-12121, Dkt. No. 53 (Bankr. N.D. Ill. Apr. 27, 2026); 11 U.S.C.§ 362(c)(2)(B). DLL may now move for summary judgment against Team Champions. A new summary judgment motion on Team Champions' alleged breach and these dependent claims would better allow the Court to evaluate whether any genuine issue of material fact exists and whether DLL is entitled to judgment as a matter of law. *See, e.g.*, *Gordon v. Veneman*, 61 F. App'x 296, 298 (7th Cir. 2003) (finding no abuse of discretion for allowing a second summary judgment motion because doing so was "better . . . than risk[ing] wasting judicial resources on a claim that should never have made it to trial"). In light of the terminated stay and to promote judicial efficiency in assessing whether claims should proceed to trial, the Court denies DLL's summary judgment motion as to its claims that RT Group, Run Direct, and Trukhan breached their Team Champions guaranties and its claims for replevin and detinue of the Team Champions trucks, without prejudice to refiling the motion. The Court proceeds with analyzing the claims based on the RT Group loan agreements.[5]

## I. Breach of Contract (Counts VII–XII against RT Group, Run Direct, Ropii, and Trukhan)

DLL claims that Defendants breached the RT Group loan agreements and guaranties by RT Group's default on payments. Defendants respond that a genuine issue of material fact exists as to whether they defaulted.

### a. Choice of Law

A federal court looks to the forum state's choice-of-law rules for a diversity suit. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). Under Illinois law, the contract's choice-of-law clause generally controls. *Hendricks v. Novae Corp. Underwriting, Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017). There are exceptions when another state has a materially greater interest in the subject matter of the litigation or the parties bear no substantial relationship with the chosen state. *Id.*; *Old Repub. Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 906 N.E.2d 630, 636 (Ill. App. Ct. 2009); *Hendricks*, 868 F.3d at 545. The contracts at issue choose Pennsylvania law as their governing law. [93] at 87, 111, 130 (loan agreements); *id.* at 90–91, 93, 116–17, 134–35, 137 (guaranties). DLL is a Michigan corporation that is principally located in Pennsylvania. DRPSOF ¶ 1. Defendants do not assert an exception for these routine financing contracts that involve a party principally located in Pennsylvania. Therefore, the Court applies Pennsylvania law.

---

[5] The Court does not consider Team Champions' guaranties and does not decide its liability under those contracts in Part I.

Under Pennsylvania law, a breach-of-contract claim requires "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted). Defendants concede that they entered into the loan and guaranty agreements. DLL also asserts that Run Direct executed guaranties, which are admitted facts. As a result, the first element is satisfied, and the Court proceeds to the other elements.

**b. Breach**

DLL claims that Defendants breached the RT Group loan and guaranty agreements by failing to make payment when due. DRPSOF ¶¶ 41–42. Defendants contest that DLL has not supplied factual evidence of their alleged breaches.

The first step for analyzing whether a breach occurred is determining what constitutes a breach under the agreements. Pennsylvania law dictates that when the words in a contract are clear and unambiguous, the parties' intent is found exclusively in the express language of the agreement. *PSC Info Group v. Lason, Inc.*, 681 F.Supp.2d 577, 585 (E.D. Pa. 2010) (citing *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)). The Court must give effect to unambiguous contractual terms "without reference to matters outside the contract." *Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93 (3d Cir. 2001) (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (1993)).

Here, the explicit terms of the loan agreements specify that a default occurs when RT Group "fails to pay any payment or sum when due." [93] at 86, 110, 129. If payment is not made when due, DLL may "declare all unpaid periodic installment payments and any other sums due under the Note and this Agreement immediately due and payable and similarly accelerate the balances due under any other agreement between [DLL] and Customer without notice or demand," and "declare and/or sue for and receive all payments and sums due under the Note, this Agreement, or any other agreement[.]" *Id.* Similarly, Run Direct, Ropii, and Trukhan "unconditionally guarant[eed] to [DLL] . . . the absolute, unconditional, full, prompt and faithful performance and payment of each and every payment required to be made in connection with [RT Group's] Obligations, including, without limitation, all periodic installments as well as all sums payable thereunder upon default of such Obligations by [RT Group], upon demand[.]" [93] at 90–91, 93, 116–17, 134–35, 137. This plain language and integrative structure of the agreements make the terms and consequences of default clear and unambiguous. Defendants must make timely payments, and if they do not, DLL can require them to pay the remaining loan balances and certain fees immediately.

Generally, when a party fails to satisfy an express contractual obligation, "the lack of performance is a breach." *Rosser Int'l, Inc. v. Walter P. Moore & Assocs., Inc.*, 2013 WL 3989437, at *15 (W.D. Pa. Aug. 2, 2013) (quoting *John B. Conomos, Inc. v.*

*Sun Co., Inc. (R&M)*, 831 A.2d 696, 707–08 (Pa. Super. Ct. 2003)). The admitted facts show that RT Group failed to make payments under all three loan agreements when due, triggering default. DRPSOF ¶ 41. Run Direct, Ropii, and Trukhan then failed to pay on RT Group's behalf. *Id.* ¶ 42. When DLL demanded payment, they did not satisfy outstanding payments. *Id.* ¶¶ 46–47. As a result, there is no genuine issue of material fact that Defendants failed to satisfy their express contractual obligations, which constitutes breach of their agreements. *See Rosser*, 2013 WL 3989437, at *15.

Despite missing payments, Defendants contend that the parties were discussing outstanding amounts and payment methods when DLL sued. They cite Trukhan's testimony indicating that DLL should have proposed a payment plan or otherwise mitigated damages instead of suing. *See* [93] at 271–72. Certainly, Pennsylvania law generally requires the non-breaching party to mitigate damages. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 132 (3d Cir. 2016) (citing *Stonehedge Square Ltd. P'ship v. Movie Merchs., Inc.*, 715 A.2d 1082, 1084 (Pa. 1998)). However, the duty to mitigate is limited when the breaching party has "equal knowledge of the consequences of nonperformance." *Id.* That knowledge is evident from clear contract language, which the Court assumes was chosen purposely and understood by both parties. *See Crawford Cent. Sch. Dist. v. Commonwealth*, 888 A.2d 616, 623 (Pa. 2005). Defendants' agreements specified that they would owe DLL the full remaining balance if RT Group defaulted. And the agreements clearly indicate the damages and fees incurred by default without abatement, offset, defense or counterclaim. [93] at 84, 86–87, 108, 110–11, 127, 129–30 (loan agreements); *id.* at 90–91, 93, 116–17, 134–35, 137 (guaranties). Given their equal knowledge of the consequences of nonperformance, DLL did not have to mitigate damages before filing suit. *See, e.g.*, *Toshiba*, 674 F. App'x at 132 (affirming that no duty to mitigate existed where the contract clearly outlined the consequences of default).

#### c. Damages

The final breach-of-contract element is damages. DLL claims that they incurred damages equal to the amounts still owed under the loan agreements, including late charges, finance charges, and prejudgment interest. DRPSOF ¶ 51. Defendants object to damages as a legal conclusion depending on whether default occurred. *Id.* But "[t]he determination of damages is a factual question to be decided by the fact-finder." *MFW Wine Co. v. Pa. Liquor Control Bd.*, 276 A.3d 1225, 1237 (Pa. Commw. Ct. 2022) (citation omitted). In any event, the Court has ruled that RT Group defaulted under its loan agreements and that Defendants breached their contracts. Defendants dispute only the amount of damages, and "[t]he mere uncertainty as to the amount of damages will not bar a recovery where it is clear that damages were the certain result of the defendant's conduct." *Smith v. Penbridge Assocs., Inc.*, 655 A.2d 1015, 1021 (Pa. Super. Ct. 1995) (cleaned up); *see Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 868 (Pa. 1988) (distinguishing between the existence and the extent of damages). Because Defendants do not submit any evidence that

their default did not cause injury to DLL, the Court finds no genuine issue of material fact as to whether the incomplete payments damaged DLL. Accordingly, DLL is entitled to summary judgment on liability for RT Group, Run Direct, Ropii, and Trukhan.

Although DLL is entitled to summary judgment on liability, it bears the burden of establishing that there is no genuine issue of material fact about its damages calculation. *See Hotel 71*, 778 F.3d at 601; *see, e.g.*, *Coldwell Banker Real Est. LLC v. Premier Est. Brokerage Servs., Inc.*, 2012 WL 1044513, at *6 (N.D. Ill. Mar. 28, 2012) (granting summary judgment on claims but ordering further proceedings to determine the extent of damages owed). DLL uses its litigation specialist's calculations of total past-due payments, discounted remaining payments, late charges, finance charges, and accrued prejudgment interest under each RT Group loan agreement. DRPSOF ¶ 51; [93] at 33–35. In response, Defendants present testimony disputing the late and finance charges. [93] at 278–79. However, the record lacks additional evidence to resolve this dispute. Although the loan agreements entitle DLL to "a late charge of five percent (5%) of [any] overdue payment," DLL asserts late charges that are greater than five percent of its listed "past due payments." *See id.* at 33–34, 84, 108, 127. Additionally, it is unclear how DLL calculated its finance charges, which cover various types of reimbursements. *See id.* The record does not contain business records to substantiate the purported amounts under each agreement.[6]

DLL also needs to prove its attorneys' fees and costs on these specific claims. Under Pennsylvania law, the loan and guaranty agreements' provision of attorneys' fees and costs entitles DLL to recover them. *See* [93] at 86, 110, 129; *McMullen v. Kutz*, 985 A.2d 769, 776–77 (Pa. 2009). DLL's purported fees and costs include work enforcing rights under the agreements for Team Champions' loans, which the Court does not consider on this motion. The statement of facts and supporting materials do not separate the attorneys' efforts in a way that enables the Court to award fees and costs only related to DLL's successful claims.

Therefore, the Court orders the parties to confer, attempt to agree on the calculation of the amount of damages Defendants now owe to DLL, and file a joint agreed statement of damages. If the parties are unable to agree on the calculation, then DLL is ordered to file a request for damages with its proposed calculation, to which Defendants may file a response and DLL may reply. Whether agreed to or proposed separately, the calculation shall include (1) both the method and the legal support for the method of calculating the amounts due under the loan agreements as a result of Defendants' failure to make monthly payments; (2) the calculation of the

---

[6] Indeed, the record lacks records of due dates and non-payment to corroborate the asserted amount of unpaid loans. However, Defendants do not dispute those portions of DLL's damages calculation.

18% per annum prejudgment interest; (3) an itemization of late fees; and (4) an itemization of finance charges. Additionally, DLL shall submit an affidavit establishing the requested amount of attorneys' fees related to the claims decided in DLL's favor.

## II. Replevin (Count XV against RT Group)

DLL brings two other claims against RT Group to recover the trucks that RT Group purchased with its loans. Rule 64 of the Federal Rules of Civil Procedure provides that federal courts may employ "every remedy [that is available] under the law of the state where the court is located . . . to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Under Illinois law, a party may bring an action of replevin to recover goods or chattels that have been wrongfully detained. 735 ILCS 5/19-101. The plaintiff must describe the sought-after property and show that (1) it owns or is lawfully entitled to possess the property; (2) the property is wrongfully detained by the defendant; and (3) the property is not subject to any tax, assessment, fine, seizure order, or replevin order. 735 ILCS 5/19-104. It must also make a demand for surrender of the property and provide notice of a hearing at which the defendant may contest the entry of an order of replevin. 735 ILCS 5/19-105, 107; *Carroll v. Curry*, 912 N.E.2d 272, 274–75 (Ill. App. Ct. 2009). However, the notice and hearing requirements are satisfied if the plaintiff is entitled to replevin as a matter of law. *See, e.g.*, *Leaf Cap. Funding, LLC v. Seabrook Ridge, Inc.*, 2024 WL 6967180, at *3 (N.D. Ill. Feb. 23, 2024) (collecting cases).

It is undisputed that DLL has a first-priority security interest in the trucks, that DLL demanded that RT Group turn them over, and that the trucks are not subject to any taxes, assessments, fines, seizure orders, or replevin orders. DRPSOF ¶¶ 57–58. Defendants have not opposed this claim with affirmative material creating a genuine issue of material fact on DLL's possession rights. Therefore, the undisputed facts establish that DLL is entitled to an order of replevin as a matter of law.

## III. Detinue (Count XVI against RT Group)

DLL's last claim against RT Group seeks repossession of the trucks under detinue, the "common law analogue of replevin." *Firestone Fin., LLC v. WA Gym Naperville N., LLC*, 2022 WL 4094161, at *7 (N.D. Ill. Sep. 7, 2022). A plaintiff must establish that its right to possession is superior to that of the defendant. *L & LC Trucking Co. v. Jack Freeman Trucking Co.*, 343 N.E.2d 716, 717 (1976). DLL has established that it has a superior right to possession because of its first-priority security interest in the trucks and Defendants' defaults under the loan and guaranty agreements. Thus, DLL is entitled to an order of detinue.

## Conclusion

For these reasons, the Court grants in part and denies in part DLL's motion for summary judgment [91]. No genuine issue of material fact precludes judgment as

a matter of law in DLL's favor on its claims that RT Group, Run Direct, Ropii, and Trukhan breached their RT Group loan contracts, except to the amount of damages owed. Accordingly, on Counts VII, VIII, IX, X, XI, and XII, the Court grants summary judgment in favor of DLL and against RT Group, Run Direct, Ropii, and Trukhan, jointly and severally, on liability and on damages in an amount yet to be determined. By October 20, 2026, either (1) the parties shall file a joint agreed statement of damages setting forth the agreed calculation of damages or, if unable to agree on the calculation of damages, (2) DLL shall file an individual request for damages, to which Defendants may respond by November 19, 2026 and DLL reply by December 21, 2026. The statement or request must comply with this Memorandum Opinion and Order.

The Court also grants summary judgment on Counts XV and XVI for replevin and detinue of the RT Group trucks. DLL shall submit a proposed order for replevin and detinue for the RT Group trucks to the Court's proposed order email inbox by August 28, 2026.

Finally, the Court denies DLL's motion as to Counts II, IV, and VI against RT Group, Run Direct, and Trukhan for breach of their Team Champions guaranties, and as to Counts XIII and XIV against Team Champions for replevin and detinue, without prejudice to refiling the motion. Plaintiff may may file a renewed motion for summary judgment on the remaining claims by October 20, 2026.

**SO ORDERED.**

Dated: August 21, 2026

Sunil R. Harjani
United States District Judge